UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ALEXIS JULIENE DANIELS, | ) |
| Petitioner, | ) |
| v. | ) No. 2:19-cv-00010-JPH-MJD |
| WARDEN, | ) |
| Respondent. | ) |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Alexis Daniels' petition for a writ of habeas corpus challenges her conviction in a prison disciplinary proceeding identified as RTC 18-10-0041. For the reasons explained in this Entry, Ms. Daniels' petition is **DENIED**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

RTC 18-10-0041 began with the following conduct report written on October 2, 2018, by CPO Chapman:

> Offender Daniels, Alexis # 259196 places recorded telephone calls to Robert McCoy. During these phone calls Daniels + Robert discussed the drop and items to be dropped to include tobacco, make up, + other items at Raccoon Lake to be picked up by an offender working on the Raccoon Crew to bring back into Rockville Correctional Facility.

Dkt. 10-1.

CPO Chapman's investigation file documents Ms. Daniels' participation in 20 phone calls between August 25 and September 9, 2018. *See* dkt. 12. During those calls, she spoke with people inside and outside the prison to coordinate the placement of contraband, including cigarettes, tobacco, and makeup, at a location where another inmate assigned to a work crew would retrieve the items and bring them back to the prison. The calls included explicit discussions about packaging and placing the contraband and passing it through the prison. Some of this contraband was found in the prison.

On October 2, 2018, Ms. Daniels received a screening report notifying her that she had been charged with trafficking in violation of Code 113-A. Dkt. 10-4. The disciplinary action proceeded to a hearing on October 29. Dkt. 10-6. According to the hearing officer's report, Ms. Daniels made the following statement in her defense at the hearing:

> I did not work Raccoon Crew; the girl who did is no longer at Rockville. I only helped the girl. I am not guilty of A Class A; just conspiracy. I was a [peon] in all this.

*Id.*

The hearing officer found Ms. Daniels guilty of trafficking in violation of Code 113-A. *Id.* In reaching that conclusion, the hearing officer considered the staff reports, Ms. Daniels' statement, photographs of contraband, and transcripts of her phone calls. *Id.* The hearing officer

noted that the reason for her decision was "offender statement and Investigation of incident; Offender Daniels did traffick items into RCF." *Id.* The hearing officer assessed sanctions, including the deprivation of 90 days' earned credit time and a demotion in credit-earning class. *Id.*

Ms. Daniels appealed her conviction to the facility head on October 30, 2018. Dkt. 10-7. Her appeal included the following statement:

> I feel like I was wrongfully found guilty of this write up due to the fact that I never trafficked the alleged contraband; I was only aiding the person who did the alleged trafficking. My CAB should have been attempting/aiding/abetting/conspiracy. It even states in the write up that another offender was bringing the contraband in.

*Id.* The facility head upheld Ms. Daniels' conviction and sanctions but modified the offense to conspiring to traffic in violation of Codes 111-A and 113-A. *Id.* She provided the following explanation:

> You admit in this appeal that you assisted another offender to commit this 113A offense. While you did not personally deliver the items into the facility, the conduct report and supporting documents clearly indicate that items were trafficked into the facility as a result of your aid/involvement. **I am amending the offense code to 111/113A, which simply means that you conspired and abetted with another individual to commit this offense (113A, Trafficking). This modification does not change the severity of the offense . . . . therefore, I agree with the sanctions imposed.**

*Id.* (emphasis in original). Ms. Daniels did not obtain any further relief through her appeal to the final reviewing authority. Dkt. 10-8.

### III. Analysis

Ms. Daniels' arguments fall into two categories: challenges to the sufficiency of the evidence against her, and challenges to the impartiality of the decision-maker who found her guilty. For the reasons explained below, neither of these arguments allow the Court to grant her petition.

3

### A. Sufficient Evidence

Several of the issues Ms. Daniels raises in her petition may be read as challenges to the sufficiency of the evidence against her. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat*, 288 F.3d at 981. "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

When assessing the sufficiency of the evidence in a habeas proceeding, the Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Instead, the Court must limit its inquiry "to whether *any reliable evidence* exists to support the conclusions drawn by the hearing officer." *Id.* (emphasis added).

After the facility head amended the charge, sanctions were imposed against Ms. Daniels for violating Codes 111-A (Conspiracy/Attempting/Aiding or Abetting) and 113-A (Trafficking). An inmate violates Code 111-A by "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." Dkt. 10-9 at § 111. An inmate violates Code 113-A by "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." *Id.* at § 113.

As a preliminary matter, while the facility head amended the charge to include Code 111-A after the disciplinary hearing had been conducted, neither a revised notice nor a new hearing were required. *See Driver v. Hanks*, 136 F. App'x 909, 911 (7th Cir. 2005). Next, the evidence presented to the hearing officer showed that Ms. Daniels worked with multiple people to bring cigarettes and tobacco into the prison. There is no dispute that these are unauthorized items. Ms. Daniels made arrangements for a person to place the unauthorized items in a location where another inmate could retrieve them. The prison staff later found those items in the prison. In at least one case, the prison staff found the items in the possession of a prisoner.

Based on this evidence, it was reasonable for the facility head to conclude that Ms. Daniels either conspired with other people, or aided and abetted them, in moving unauthorized objects to other people without authorization from the prison officials. Accordingly, sufficient evidence supported Ms. Daniels' conviction.

Ms. Daniels argues that the absence of several pieces of evidence from the record merits habeas relief. For example, she notes that she was never found to be in possession of any contraband; that no paperwork shows that any contraband was confiscated from her; and that her co-conspirators were not named in the conduct report. But evidence of possession or confiscation was not necessary to convict Ms. Daniels of conspiring to traffic, and the fact that the conduct report does not name her co-conspirator does not mean she did not conspire to traffic—especially given that Ms. Daniels *admitted* in her appeal that she aided another inmate in bringing the items into the prison. Dkt. 10-7. Because there is some reliable evidence showing that Ms. Daniels committed the offenses with which she was charged, the Court may not consider whether some other evidence (or the absence of additional evidence) might also support the opposite conclusion.[1]

---

[1] To the extent that Ms. Daniels argues that the prison staff's failure to complete certain paperwork, such as a confiscation slip, denied her due process, she is incorrect. Prison policies are "primarily designed to

5

## B. Impartial Decision-Maker

Ms. Daniels alleges that the "[h]earing officer wasn't impartial and was bias[ed] due to the writer." Dkt. 1 at 2. She adds that her "past failed drug test played as an aggravator to this case." *Id.* However, Ms. Daniels has not elaborated with any details about how the hearing officer demonstrated partiality, how "the writer" biased the hearing officer, or why she believes the hearing officer considered her failed drug test as evidence of guilt.

A prisoner in a disciplinary action has the right to be heard before an impartial decision-maker. *Hill*, 472 U.S. at 454. However, hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Moreover, the "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. The presumption is overcome—and an inmate's right to an impartial decision-maker is breached—in rare cases, such as when the hearing officer has been "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

---

guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis,* 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire ,* 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

6

Simply put, Ms. Daniels has not presented any evidence—much less clear evidence—to overcome the presumption that her hearing officer was impartial. *Piggie*, 342 F.3d at 666. There is no indication that the hearing officer was involved in the investigation of her trafficking scheme, and Ms. Daniels has not provided any other reason to doubt that her charge was considered by an honest and impartial officer.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff,* 418 U.S. at 558. Ms. Daniels' petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles her to the relief she seeks. Accordingly, Ms. Daniels' petition for a writ of habeas corpus must be **DENIED** and the action **DISMISSED with prejudice.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 2/20/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ALEXIS JULIENE DANIELS
259196
ROCKVILLE – CF
ROCKVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
811 West 50 North
Rockville, IN 47872

Abigail T. Rom
INDIANA ATTORNEY GENERAL
abby.rom@atg.in.gov